**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

| | |
|---|---|
| TERRI BASDEN, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) CAUSE NO. 3:10-CV-00002-WTL-WGH |
| PROFESSIONAL TRANSPORTATION, INC., | ) |
| | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Comes now the Defendant, Professional Transportation, Inc., hereinafter "PTI," by counsel, Paul J. Wallace and Robert W. Rock of Jones · Wallace, LLC, and submits the following Brief in Support of its Motion for Summary Judgment:

*I. Introduction*

The Plaintiff alleges that, in terminating her employment, PTI violated the Americans with Disabilities Act of 1990 (the "ADA") and Family and Medical Leave Act of 1993 (the "FMLA"). Further, the Plaintiff alleges that PTI retaliated against her because she engaged in a statutorily protected activity. PTI is entitled to summary judgment for the following reasons: (1) the Plaintiff is not a "qualified individual" as defined by the ADA; (2) the Plaintiff cannot establish a *prima facie* case of either direct or indirect discrimination or retaliation; (3) PTI had a legitimate, nondiscriminatory reason for terminating the Plaintiff; (4) the Plaintiff was not an "eligible employee" as defined by the FMLA; and (5) the Plaintiff cannot establish a *prima facie* case of either FMLA interference or retaliation.

## II.  Statement Of Material Facts Not In Dispute

PTI is part of the United Companies headquartered in Evansville, Indiana.  *Acuff Declaration* ¶ 4; *Kirk Declaration* ¶ 4; *Davis Declaration* ¶ 4; *Greulich Declaration* ¶ 4. PTI provides ground transportation to the railroad industry in numerous states.  *Acuff Declaration* ¶ 4; *Kirk Declaration* ¶ 4; *Davis Declaration* ¶ 4; *Greulich Declaration* ¶ 4. The Dispatch Center dispatches drivers and coordinates the ground transportation to its railroad customers.  *Acuff Declaration* ¶ 4; *Kirk Declaration* ¶ 4; *Davis Declaration* ¶ 4; *Greulich Declaration* ¶ 4.  Due to the unique work performed by the Dispatch Center and its requirement to provide year round, 24 hour service to its customers, attendance by Dispatch employees is critical and essential to the mission and service provided by the Dispatch Center to its customers.  *Acuff Declaration* ¶ 5; *Kirk Declaration* ¶ 5; *Davis Declaration* ¶ 5; *Greulich Declaration* ¶ 5.  Because of its year round, 24 hour service, the Dispatch Center has, in addition to the United Companies' attendance policy, a supplemental attendance policy entitled: "Addendum to the United Companies Employee Handbook."  *Acuff Declaration* ¶ 5; *Kirk Declaration* ¶ 5; *Davis Declaration* ¶ 5; *Greulich Declaration* ¶ 5.  All United Companies and PTI employees are subject to the same disciplinary rules and procedure set forth in the Rules of Conduct of § XVIII of the United Companies Employee Handbook.  *Greulich Declaration* ¶ 7.

The Dispatch Center's supplemental attendance policy defines absenteeism as incidents away from work.  *Acuff Declaration* ¶ 6; *Kirk Declaration* ¶ 6; *Davis Declaration* ¶ 6; *Greulich Declaration* ¶ 6.  An incident can be missing more than four hours from one shift, missing one shift, or missing more than one shift if the reason for missing is related to the same cause that resulted in the initial absence.  *Acuff Declaration* ¶ 6;

*Kirk Declaration* ¶6; *Davis Declaration* ¶6; *Greulich Declaration* ¶ 6.  For example, three missed shifts which occur as a result of the same illness and supported by a physician's note is considered one incident of absenteeism.  *Acuff Declaration* ¶6; *Kirk Declaration* ¶6; *Davis Declaration* ¶6; *Greulich Declaration* ¶ 6.  The supplemental attendance policy prescribes corrective action for excessive absenteeism when it occurs within the same year, as follows:

    a.  upon the fifth incident, a verbal warning may be given;

    b.  upon the sixth incident, a written warning may be given;

    c.  upon the seventh incident, a three day suspension may be given; and

    d.  upon the eighth incident, the employee may be terminated for violating the attendance policy.  *Basden's Dep.* pp. 76-77; *Acuff Declaration* ¶6; *Kirk Declaration* ¶6; *Davis Declaration* ¶6; *Greulich Declaration* ¶ 6.

The Plaintiff, Terri Basden ("Basden"), was employed as a Dispatcher from June 29, 2007, until the effective date of her termination on May 27, 2008.  *Acuff Declaration* ¶7; *Kirk Declaration* ¶7; *Davis Declaration* ¶7; *Greulich Declaration* ¶ 8; *Basden's Dep.* pp. 36, 61, 64-65, 69 (Ex. 3), 70-72; *Basden's Dep.* (2)[1] p. 22.  Basden was assigned to second shift which worked from 3:00 p.m. until 11:00 p.m.  *Acuff Declaration* ¶7; *Kirk Declaration* ¶7; *Davis Declaration* ¶7; *Greulich Declaration* ¶ 8; *Basden's Dep.* pp. 36, 61, 64-65, 69 (Ex. 3), 70-72; *Basden's Dep.* (2) p. 22.  Basden was hired to work full-time, 40 hours or more per week.  *Basden's Dep.* p. 63.  She averaged 44 to 48 hours per week.  *Basden's Dep.* p. 73.  Basden did not have a disability, a serious health condition, or any health problems when she was hired by PTI.  *Basden's Dep.* pp. 51-

---

[1] Volume II of Basden's Deposition is indicated as *Basden Dep.* (2).

52, 58, 60-61.  On June 29, 2007, Basden acknowledged, by her signature, that she had received PTI's employee polices and handbook, including its "Addendum to the United Companies Employee Handbook" for Dispatch Center employees.  *Acuff Declaration* ¶ 8; *Kirk Declaration* ¶ 8; *Greulich Declaration* ¶ 9; *Basden's Dep.* pp. 59, 73 (Ex. 5), 74 (Ex. 5A), 78 (Ex. 2).  Basden also received the United Companies handbook which includes descriptions of employment benefits and the United Companies Employee Handbook.  *Greulich Declaration* ¶ 9.  PTI's handbook stressed that employees should arrive on time for work.  *Basden's Dep.* (2) p. 12.  PTI's handbook also stressed that attendance was important.  *Basden's Dep.* (2) p. 13.

On November 21, 2007, Basden was disciplined and verbally counseled for insubordination and poor work performance.  *Basden's Dep.* pp. 119 (Ex. 15), 120, 124 (Ex. 19); *Acuff Declaration* ¶ 9; *Kirk Declaration* ¶ 9; *Greulich Declaration* ¶ 10.  On January 30, 2008, Basden was disciplined and verbally counseled for poor work performance.  *Basden's Dep.* pp. 121 (Ex. 16), 122; *Acuff Declaration* ¶ 10; *Kirk Declaration* ¶ 10; *Greulich Declaration* ¶ 11.  On April 5, 2008, Basden was disciplined, in writing, for poor work performance.  *Basden's Dep.* pp. 122 (Ex. 17), 123, 124 (Ex.18); *Acuff Declaration* ¶ 11; *Kirk Declaration* ¶ 11; *Greulich Declaration* ¶ 12.  On April 16, 2008, Basden was given a written warning for excessive absenteeism.  *Davis Declaration* ¶ 9.  On May 1, 2008, PTI granted Basden's request to become a part-time employee.  *Basden's Dep.* (2) pp. 18, 60-61; *Acuff Declaration* ¶ 12; *Kirk Declaration* ¶ 12; *Davis Declaration* ¶ 10; *Greulich Declaration* ¶ 13.  Basden missed "a lot of work" at PTI.  *Basden's Dep.* pp. 29, 131-32.  Basden was not able to work full-time since the

winter and spring of 2008.  *Basden's Dep.* pp. 29-30.  PTI's records show the following absences for Basden:

1. Incident # 1: Basden was absent on July 24 and July 25, 2007 (*Basden's Dep.* p. 133; *Acuff Declaration* ¶ 18; *Kirk Declaration* ¶ 18; *Greulich Declaration* ¶ 19);

2. Incident # 2: Basden was absent on September 29 and September 30, 2007 (*Basden's Dep.* pp. 133-34; *Acuff Declaration* ¶ 18; *Kirk Declaration* ¶ 18; *Greulich Declaration* ¶ 19);

3. Incident # 3: Basden was absent on January 14, 15, 16 and 17, 2008 (*Basden's Dep.* p. 134; *Acuff Declaration* ¶ 18; *Kirk Declaration* ¶ 18; *Greulich Declaration* ¶ 19);

4. Incident # 4: Basden was absent on February 1, 2008 (*Basden's Dep.* pp. 134-35; *Acuff Declaration* ¶ 18; *Kirk Declaration* ¶ 18; *Greulich Declaration* ¶ 19);

5. Incident # 5: Basden was absent on March 13, 14, and 15, 2008 – on March 18, 2008, Basden was given a verbal warning in accordance with the Dispatch Center's supplemental attendance policy (*Basden's Dep.* pp. 130-31 (Ex. 24), 135; *Acuff Declaration* ¶ 18; *Kirk Declaration* ¶ 18; *Davis Declaration* ¶ 8; *Greulich Declaration* ¶ 19);

6. Incident # 6: Basden was absent on April 7, 8, 11, 12, 13, and 14, 2008 – on May 1, 2008, Basden was given a written warning in accordance with the Dispatch Center's supplemental attendance policy (*Basden's Dep.* pp. 129-30 (Ex. 23), 135-36; *Acuff Declaration* ¶ 18; *Kirk Declaration* ¶ 18; *Davis Declaration* ¶ 10; *Greulich Declaration* ¶ 19);

7.  Incident # 7: Basden was absent on May 23, 2008 – Basden was suspended for three (3) days, without pay, in accordance with the Dispatch Center's supplemental attendance policy (*Basden's Dep.* pp. 136-37; *Acuff Declaration* ¶¶ 15, 18; *Kirk Declaration* ¶¶ 15, 18; *Davis Declaration* ¶ 11; *Greulich Declaration* ¶¶ 16, 19); and

8.  Incident # 8: Basden failed to return to work after her suspension – Basden was terminated in accordance with the Dispatch Center's supplemental attendance policy (*Basden's Dep.* p. 137; *Basden's Dep.* (2) p. 44; *Acuff Declaration* ¶ 18; *Kirk Declaration* ¶ 18; *Greulich Declaration* ¶ 19).

Basden's last day of work at PTI was May 20, 2008.  *Basden's Dep.* pp. 95-96, 137; *Acuff Declaration* ¶ 13; *Kirk Declaration* ¶ 13; *Greulich Declaration* ¶ 14.  From and after May 20, 2008, Basden failed to return to work, and her supervisor, George Acuff, assumed she had quit.  *Acuff Declaration* ¶ 17; *Kirk Declaration* ¶ 17; *Greulich Declaration* ¶ 18.

On May 23, 2008, Basden applied for a personal leave of absence, pursuant to PTI's personnel policies.  *Basden's Dep.* pp. 89-90, 92-93 (Ex. 8); *Acuff Declaration* ¶ 14; *Kirk Declaration* ¶ 14; *Greulich Declaration* ¶ 15.  However, Basden was told by Steven Greulich, the Human Resources Manager, that she was not eligible for leave either under the Family and Medical Leave Act or pursuant to PTI's personal leave of absence policy.  *Greulich Declaration* ¶ 15; *Basden's Dep.* (2) p. 40.  An employee requesting an unpaid leave of absence is required to continue working until the leave request is reviewed.  *Acuff Declaration* ¶ 14; *Kirk Declaration* ¶ 14; *Greulich Declaration* ¶ 15.  The leave request must be submitted, in writing, at least two weeks in advance of

6

the requested leave period.  *Acuff Declaration* ¶ 14; *Kirk Declaration* ¶ 14; *Greulich Declaration* ¶ 15.  Her request for leave was not pursuant to the Family and Medical Leave Act (FMLA).  *Basden's Dep.* (2) p. 57.  Basden was scheduled to work on May 23, 2008, but she did not work that day.  *Basden's Dep.* (2) p. 42; *Acuff Declaration* ¶ 14; *Davis Declaration* ¶ 11; *Greulich Declaration* ¶ 15.  To be eligible for a personal leave of absence pursuant to PTI's policies an employee is required to have been employed for at least one year.  *Basden's Dep.* (2) p. 14.  Basden had not worked for PTI for one year when she submitted her request for a personal leave of absence. *Basden's Dep.* (2) p. 14.  At the time Basden turned in her leave request she was unable to work, but she did not provide a note from her doctor.  *Basden's Dep.* pp. 96, 99; *Basden's Dep.* (2) pp. 14, 36-37, 42.  In accordance with PTI's personnel policies, whether or not a request for personal leave would be granted was left to the discretion of PTI.  *Basden's Dep.* p. 98 (Ex. 9).  Basden was not eligible for leave under the Family and Medical Leave Act (FMLA) because she had not worked a year at PTI.  *Basden's Dep.* pp. 89-90, 137-38; *Basden's Dep.* (2) pp. 37, 39-41.

On May 27, 2008, George Acuff, the Dispatch Manager, denied Basden's request for an unpaid leave of absence since Basden was not eligible for the leave because she had not been employed for one year.  *Basden's Dep.* p. 92 (Ex. 8); *Acuff Declaration* ¶¶ 3, 16; *Kirk Declaration* ¶ 16; *Greulich Declaration* ¶ 17.  George Acuff mailed his denial to Basden.  *Acuff Declaration* ¶ 16.  On approximately May 29, 2008, Basden received the denial of her request for a personal leave of absence.  *Basden's Dep.* pp. 94, 137.  When Basden received the denial she called her supervisor, George Acuff, who informed her that she had been terminated for violating PTI's attendance

policy.  *Basden's Dep.* pp. 94-95, 137; *Basden's Dep.* (2) p. 44.  Basden also was not eligible for the leave because she was not a full-time employee at the time of her request, and she did not timely submit her request or inform her supervisors whether her request was necessitated by reason of an emergency.  *Acuff Declaration* ¶ 16; *Kirk Declaration* ¶ 16; *Greulich Declaration* ¶ 17.  According to the United Companies Employee Handbook, Basden's employment could be terminated, either with or without cause, at any time.  *Acuff Declaration* ¶ 21; *Kirk Declaration* ¶ 21; *Greulich Declaration* ¶ 22.

Basden cannot identify a circumstance where the attendance policy was applied differently to another employee with a similar attendance record.  *Basden's Dep.* (2) pp. 44-45, 60.  Basden has no evidence of direct discrimination.  *Basden's Dep.* (2) p. 46.  Basden has no evidence to support her claim that she was terminated because of her suspected MS.  *Basden's Dep.* (2) p. 46.  Basden is not aware of similar employees who were treated differently or more favorably.  *Basden's Dep.* (2) pp. 47, 57-58.  Basden never asked for a change in work conditions or circumstances while employed at PTI with the exception that: (a) she requested to become a part-time employee which was granted on May 1, 2008; and (b) she requested to be changed from being a "Closer" to "Dispatch," which request was also granted.  *Kirk Declaration* ¶ 20; *Acuff Declaration* ¶ 20; *Davis Declaration* ¶ 13; *Greulich Declaration* ¶¶ 13, 21.

Basden can no longer work 40 hours per week, and she has been limited to part-time work since May 1, 2008.  *Basden's Dep.* pp. 28-29, 102 (Ex. 11); *Basden's Dep.* (2) pp. 18, 34.  From the doctor notes provided to PTI from Basden, PTI was not given notice that Basden had been diagnosed with multiple sclerosis (MS).  *Basden's Dep.*

8

pp. 103-04 (Ex. 10 & 11); *Acuff Declaration* ¶ 19.  PTI was aware that Basden's physicians were investigating whether she possibly may have had MS.  *Basden's Dep.* pp. 103-04 (Ex. 10 & 11), 106, 115; *Greulich Declaration* ¶ 20.  But PTI never received a diagnosis or confirmation from any physician or medical provider that Basden was suffering from MS or from any other disability, disease or illness while she was employed by PTI, and the only information George Acuff had regarding Basden's health was that she was undergoing some medical tests.  *Acuff Declaration* ¶ 19; *Kirk Declaration* ¶ 19; *Greulich Declaration* ¶ 20.  The only information Theresa Kirk, the Assistant Dispatch Manager, had regarding Basden's health was that: (a) Basden was having trouble due to dizziness and balance; and (b) she was undergoing medical tests. *Kirk Declaration* ¶ 19.  Basden never told Theresa Kirk or John Davis, PTI's Second Shift Supervisor, that she had MS or was suspected of having MS.  *Kirk Declaration* ¶ 19; *Davis Declaration* ¶ 12.  Basden never informed John Davis or gave him any information regarding a diagnosis or confirmation from any physician or medical provider that she was suffering from MS or from any other disability, disease or illness while she was employed by PTI.  *Davis Declaration* ¶ 12.  The only information John Davis had regarding Basden's health were non-specific complaints she made of headaches or generally not feeling well.  *Davis Declaration* ¶ 12.

Basden's health condition was not good at the time of her termination from PTI. *Basden's Dep.* p. 52.  Her poor health caused her to miss work.  *Basden's Dep.* p. 52. Basden was diagnosed with multiple sclerosis (MS) in June of 2008, after she was terminated from PTI.  *Basden's Dep.* pp. 25, 142; *Basden's Dep.* (2) pp. 7-8.

Basden was terminated solely because, and for no other reason, of excessive absenteeism in violation of PTI's attendance policies and the attendance polices of the United Companies. *Acuff Declaration* ¶ 22; *Kirk Declaration* ¶ 22; *Davis Declaration* ¶ 14; *Greulich Declaration* ¶ 23. At all times relevant hereto, PTI's policies were followed as set forth in the United Companies Employee Handbook, the United Companies' attendance policy, and the Addendum to the United Companies Employee Handbook. *Acuff Declaration* ¶ 23; *Greulich Declaration* ¶ 24.

On December 17, 2008, Basden filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that she had been discriminated against based upon her claimed disability in violation of the Americans with Disabilities Act (ADA). *Basden's Dep.* p. 113 (Ex. 12). Basden's charge of discrimination with the EEOC does not allege a violation of the FMLA. *Basden's Dep.* p. 113 (Ex. 12). Basden is suing PTI because she believes it is unfair that PTI's absenteeism policy treats absences due to illness the same as another absence that is not related to illness. *Basden's Dep.* pp. 137-39.

Basden applied for social security benefits in June or July of 2008, and she was awarded disability benefits from the Social Security Administration in April of 2009. *Basden's Dep.* pp. 23, 31; *Basden's Dep.* (2) p. 6. Basden works part-time at the Tri-State Food Bank. *Basden's Dep.* pp. 19, 42-43.

### III.  Standard For Summary Judgment

"[S]ummary judgment is 'a salutary procedural device' utilization of which in all appropriate cases should be encouraged rather than discouraged by appellate courts." *Northwestern National Insurance Co. v. Corley*, 503 F.2d 224, 230 (7th Cir. 1974)

(quoting *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 560 (7th Cir. 1970)).  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986), the Court set forth the standard for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard   provides  that  the  mere  existence  of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48  (quoting Fed. R. Civ. P. 56(c)).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S. Ct. 2548 (1986); *Clarkson v. Town of Florence*, 198 F.Supp.2d 997, 1001 (E.D. Wis. 2002); *Posey v. Skyline Corp.*, 702 F.2d 102, 105-06 (7th Cir. 1983); *Buhr v. Reliance Standard Life Insur.*, 591 F.Supp. 1558, 1561 (E.D. Wis. 1984).

"For a dispute to be genuine, the evidence must be such that a 'reasonable jury could return a verdict for the nonmoving party.'"  *Clarkson v. Town of Florence*, *supra*, 198 F.Supp.2d at 1001 (quoting *Anderson v. Liberty Lobby*, *supra*, 477 U.S. at 248). "For the fact to be material, it must relate to a disputed matter that 'might affect the outcome of the suit.'"  *Id.*  Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.  *Bell Lumber & Pole Co. v. United States Fire Insur. Co.,* 60 F.3d 437 (8th Cir. 1995).  If the moving party meets its burden

of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, the nonmoving party then has the burden of presenting specific facts that show there is a genuine issue of material fact; the nonmoving party must go beyond pleadings and produce evidence of a genuine issue for trial. *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107 (7th Cir. 1990); and *Jackson v. Widnall*, 99 F.3d 710, 713 (5th Cir. 1996) (citing *Anderson v. Liberty Lobby*, *supra*, 477 U.S. at 250). If there is a complete failure of proof on an element essential to the nonmoving party's case and on which that party would bear the burden of proof at trial, there is no longer a genuine issue of material fact. *Tidmore Oil Co. v. B.P. Oil Co./Gulf Products Div., etc.*, 932 F.2d 1384 (11th Cir. 1991); *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112 (2nd Cir. 1991); *Engstrom v. First National Bank*, 47 F.3d 1459 (5th Cir. 1995); and *Small v. Frank*, 1996 U.S. Dist. LEXIS 10900, 153 L.R.R.M. 2480 (E.D. Penn. 1996). The standard for summary judgment can be satisfied by establishing a dispositive legal defense. *Jackson v. Widnall*, *supra*, 99 F.3d at 714.

### *IV. Americans with Disabilities Act of 1990*

### *A. A Qualified Individual with a Disability*

The Americans with Disabilities Act ("ADA") defines a "qualified individual" as follows:

Qualified individual

The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).

To prove a prima facie case of disability discrimination, a plaintiff must establish that (1) she suffers from a disability as defined by the ADA, (2) she is qualified to perform the essential functions of the job at issue, with or without reasonable accommodation, and (3) she has suffered an adverse employment action as a result of her disability. *Dargis v. Sheahan*, 526 F.3d 981, 986 (7th Cir. 2008).  In *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) (citing 29 C.F.R. app. § 1630.2(m)), the court held that in order for an ADA plaintiff to maintain an action, the plaintiff must prove that she meets the ADA's definition for a "qualified individual with a disability," namely: (1) does the employee satisfy the requirements for the position; and (2) could the employee perform the essential functions of the position, with or without reasonable accommodation, at the time of the employment decision at issue.  *See also Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 1603, 143 L.Ed.2d 966 (1999); *Nowak v. St. Rita High School*, 142 F.3d 999, 1003-04 (7th Cir. 1998) (an employee who does not come to work cannot perform the essential functions of her job – the ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing her an indefinite leave of absence); and *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th cir. 1997) (no matter the type of discrimination alleged-either disparate treatment or failure to provide a reasonable accommodation-a plaintiff must establish first that he was "a qualified individual with a disability").

At the time of her termination, Basden had not been diagnosed with a disability. Nor was Basden qualified to perform the essential functions of the job at issue because

she could no longer fulfill the critical attendance demands of the job.  In fact, Basden was even unable to fulfill the attendance requirements of her part-time position which had begun on May 1, 2008.  Lastly, there is no evidence to support the conclusion that Basden's termination was a result of her disability.  Basden was terminated for failing to comply with PTI's attendance policy, and Basden did not have a diagnosis to confirm the suspicions that she was suffering from MS at the time she was terminated.  Therefore, Basden's ADA claim fails because she cannot establish that she was a qualified individual under the ADA.

### B.  Direct and Indirect Discrimination

A plaintiff, who has established that she is a qualified individual with a disability, may prove discrimination in either of two ways: (1) by proving disparate treatment, or (2) by proving a failure to accommodate.  *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001).  "[A]n ADA plaintiff may prove disparate treatment either by presenting direct evidence of discrimination, or she may prove it indirectly using the *McDonnell Douglas* burden-shifting method."  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); and *Leffel v. Valley Financial Services*, 113 F.3d 787, 792 (7th Cir. 1997).  If the plaintiff chooses the indirect method of proof, she must produce evidence that suggests that, but for the plaintiff's disability, the employer would not have taken adverse action against the plaintiff.  *Leffel v. Valley Financial Services*, 113 F.3d at 794. Under the framework adopted in *McDonnell Douglas*, the plaintiff must satisfy and prove the following elements: (1) that she is disabled within the meaning of the ADA, (2) that her work performance met her employer's legitimate expectations, (3) that she suffered an adverse employment action,

and (4) that similarly situated employees received more favorable treatment. *Hoffman v. Caterpillar, Inc.*, *supra*, 256 F.3d at 572; and *Leffel v. Valley Financial Services*, *supra*, 113 F.3d at 794. If the plaintiff succeeds in proving her prima facie case of discrimination, then the employer/defendant must articulate a legitimate, nondiscriminatory reason for discharging her. *Leffel v. Valley Financial Services*, 113 F.3d at 792. If the employer sets forth a legitimate, nondiscriminatory reason for its action, then the plaintiff must prove that the employer's proferred reason is a pretext or merely a cover for its decision. *Id.*

Basden has conceded that there is no direct evidence of disability discrimination present in this controversy. *See Basden's Dep.* (2) p. 46. Additionally, at the time of her termination, Basden was not a qualified individual with a disability under the ADA. Nonetheless, for purposes of argument and with regard to whether Basden claims she was subjected to disparate treatment, Basden is required to prove her case through the indirect method prescribed by *McDonnell Douglas*. Any claim of disparate treatment by Basden fails, however, because she was terminated for violating PTI's attendance policy. There is no evidence to support the conclusion that she suffered an adverse action because of her health condition. *See Basden's Dep.* (2) p. 46. PTI's attendance policy is applied neutrally or in a general fashion to all incidents of absence from work. In other words, the policy only considered the reason for the absence to determine whether an employee could aggregate more than one missed shift from work into one incident of absence, but the policy would not tolerate more than seven incidents of absences in one year regardless of the reason or cause of the accumulated incidents.

Furthermore, Basden cannot carry her burden under the indirect method of proof. At the time of her termination she was not disabled within the meaning of the ADA.  She was not diagnosed with a disability, and she could not fulfill the essential functions of her job because of her poor attendance.  Her work performance also did not satisfy PTI's legitimate expectation that she show up for work dependably and in accord with its attendance policy.  Her termination was not related to her suspected health condition. *See Basden's Dep.* (2) p. 46.  And she has no evidence that a similarly situated employee received different or more favorable treatment as compared to her.  *See Basden's Dep.* (2) pp. 44-45, 47, 57-58.

Moreover, although not required since Basden cannot carry her burden, PTI has provided a legitimate, nondiscriminatory reason for discharging Basden – a reason not newly discovered during this litigation – namely, Basden's violation of PTI's attendance policy.  Basden missed at least 20 days of work and accumulated eight incidents of absence in eleven months.  This was a sufficient and legitimate reason to terminate Basden, who was an "at-will" employee.  Lastly, this reason is not a pretext because it is supported by Basden's attendance record which she does not dispute.  But also this was the reason given to Basden by her supervisor, George Acuff, on May 29, 2008, when she called him.  *Basden's Dep.* pp. 94-95, 137; *Basden's Dep.* (2) p. 44. Therefore, Basden's ADA claim fails as a matter of law in so far as she alleges that she was subjected to disparate treatment.

### C. Failure to Accommodate

The ADA defines a "reasonable accommodation" as follows:

Reasonable accommodation

The term "reasonable accommodation" may include--

**(A)** making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

**(B)** job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

The ADA requires only reasonable accommodations to known physical or mental limitations of an employee that is a qualified individual with a disability.  *Beck v. University of Wisconsin Board of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996).  "An employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations . . .", and "[a]n employer that has no knowledge of an employee's disability cannot be held liable for not accommodating the employee."  *Id.*

When the plaintiff's theory is a failure to accommodate claim, the *McDonnell Douglas* burden-shifting method is not appropriate.  *Hoffman v. Caterpillar, Inc.*, *supra*, 256 F.3d at 572.  In order to prevail on a claim of failure to accommodate a known disability, a plaintiff is required to prove that: "'(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability.'"  *Mobley v. Allstate Insurance Co.*, 531 F.3d 539, 545 (7th Cir. 2008) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)); and *Hoffman v. Caterpillar, Inc.*, *supra*, 256 F.3d at 572.  With regard to the third element, "the 'ADA requires that employer and employee engage in an interactive

process to determine a reasonable accommodation.'"  *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 797 (quoting *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998)).

The ADA does not require an employer to accommodate a qualified individual by allowing them to not work.  *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 380-81 (7th Cir. 2003).  "'[I]f one is not able to be at work, one cannot be a qualified individual.'"  *Id.* at 381 (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999)).  Spotty attendance may also show that an individual is not a qualified individual under the ADA. *Id.*

With regard to any claim by Basden that PTI failed to accommodate a known disability from which she suffered, Basden's claim also fails as a matter of law.  As discussed previously, Basden was not a qualified individual with a disability. Additionally, PTI had never been given sufficient information to inform it that Basden had a disability.  All PTI knew was that Basden had generalized health problems, that she was undergoing medical testing for her health problems, and there was a suspicion she may have had MS.  Regarding the last element of proof for a failure to accommodate theory, Basden has no evidence that PTI failed to accommodate her. The only accommodations she requested were granted.  She requested to become a part-time employee and PTI consented.  She requested to be switched from a "Closer" to "Dispatch" which request was also granted by PTI.  Other than these two requests, Basden never engaged in an interactive process with PTI to determine a reasonable accommodation, and PTI was not required to accommodate her by allowing her not to work.  Therefore, in so far as Basden claims that PTI violated the ADA by failing to accommodate her known disability, her claim fails as a matter of law.

*V.  ADA Retaliation Claim*

In order to prove a prima facie case of retaliation under the ADA, a plaintiff is required to prove: "'(1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two.'"  *Mobley v. Allstate Insurance Co.*, *supra*, 531 F.3d at 549 (quoting *Squibb v. Mem. Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007)).

Lastly, with regard to Basden's ADA claim of retaliation, Basden's claim again fails as a matter of law because she was not a qualified individual under the ADA.  She could not engage in a statutorily protected activity since she was not a qualified individual.  She did not suffer an adverse action related to her suspected medical condition or any action related or associated with the ADA.  She has no evidence to support the conclusion or inference that there is a causal connection between her termination and her suspected condition.  The evidence is clear and unambiguous that she was terminated for not showing up for work and for violating PTI's attendance policy.

*VI.  Family and Medical Leave Act of 1993*

The Family and Medical Leave Act ("FMLA") defines an "eligible employee" as follows:

Eligible employee

(A) In general

The term "eligible employee" means an employee who has been employed--

**(i)** for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and

**(ii)** for at least 1,250 hours of service with such employer during the previous 12-month period.

29 U.S.C. § 2611(2).  *See also* 29 C.F.R. § 825.110.

      An employee must demonstrate by a preponderance of the evidence that she is entitled to leave under the FMLA.  *Haefling v. United Parcel Svc.*, 169 F.3d 494, 499 (7th Cir. 1999).  An eligible employee must give notice of the need for FMLA leave thirty (30) days in advance or "'as soon as practicable under the facts and circumstances of the particular case.'"  29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.303(a); and *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 724 (7th Cir. 2007).  *See also De La Rama v. Illinois Dept. of Human Services*, 541 F.3d 681, 687 (7th Cir. 2008) (an FMLA notice must succeed in alerting the employer to the seriousness of the health condition; the FMLA does not require employers to play Sherlock Holmes in order to discover the reason for an employee's absence).  The FMLA provides that an eligible employee is entitled to leave for a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves - (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  "Whether an illness or injury constitutes a 'serious health condition' under the FMLA is a legal question."  *Haefling v. United Parcel Svc.*, *supra*, 169 F.3d at 499.

      A wrongful termination claim under the FMLA may be brought either as an interference/entitlement theory or as a discrimination/retaliation theory.  *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005).  An interference/entitlement

theory requires proof that the employer denied the employee her entitlements under the FMLA.  *Id.*  A discrimination/retaliation theory requires proof of discriminatory or retaliatory intent.  *Id.*

Basden's FMLA claim fails as a matter of law because she was not an eligible employee.  *See Basden's Dep.* pp. 89-90, 137-38; *Basden's Dep.* (2) pp. 14, 37, 39-41. Basden had not worked twelve months for PTI.  *See Basden's Dep.* (2) p. 14.  She has admitted that her leave request was not pursuant to the FMLA (it was pursuant to PTI's policy for personal leave), and she admitted that she was not an eligible employee under the FMLA.  *See Basden's Dep.* pp. 89-90, 92-93 (Ex. 8); *Basden's Dep.* (2) p. 57.

### A.  FMLA Interference Claim

To prevail on an FMLA interference claim, an employee is required to show that her employer deprived her of an FMLA entitlement.  *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).  The employee must prove that: (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled.  *Id.*; and *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (summary judgment granted in favor of the employer).

Because Basden was not an eligible employee under the FMLA any claim of interference under the FMLA she may advance also fails as a matter of law. Additionally, because she was not eligible she was not entitled to leave under the FMLA, and she never requested leave under the FMLA so there can be no interference by PTI.

*B.  FMLA Retaliation Claim*

In attempting to establish a charge of retaliation under the FMLA, a plaintiff may proceed under the direct or indirect methods of proof typically utilized in employment discrimination litigation.  *Burnett v. LFW, Inc.*, 472 F.3d at 481; and *Smith v. Hope School*, 560 F.3d at 702.  "Under the direct method, a plaintiff must present evidence that his employer took materially adverse action against him on account of his protected activity."  *Burnett v. LFW, Inc.*, 472 F.3d at 481.  Under the direct method, a plaintiff "must produce direct or circumstantial evidence that 'the protected conduct was a substantial or motivating factor in the employer's decision.'"  *Long v. Teachers' Retirement System of the State of Illinois*, 585 F.3d 344, 349 (7th Cir. 2009) (quoting *Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 741-42 (7th Cir. 2008)).  "To establish a prima facie case of retaliation under the direct method of proof, the plaintiff must present evidence of '(1) a statutorily protected activity; (2) a materially adverse employment action taken by the employer; and (3) a causal connection between the two.'"  *Id.* (quoting *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008).  A plaintiff "may prevail under the direct method either by 'showing an admission of discrimination' or by 'constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker.'"  *Cole v. Illinois*, 562 F.3d 812, 815 (7th Cir. 2009) (quoting *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008).  *See also Long v. Teachers' Retirement System of the State of Illinois*, *supra*, 585 F.3d at 350 (direct evidence typically consists of an admission by the decisionmaker; circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in

the protected group).  In response, the employer may present evidence that it would have taken the adverse employment action against the plaintiff regardless of the plaintiff's protected activity or the alleged retaliatory motive of the employer.  *Burnett v. LFW, Inc.*, *supra*, 472 F.3d at 481; and *Cole v. Illinois*, *supra*, 562 F.3d at 815.  If the employer's reason for its employment action remains unrebutted, then it is entitled to summary judgment because it "has shown that the plaintiff wasn't harmed by retaliation."  *Burnett v. LFW, Inc.*, 472 F.3d at 481*.*

Again Basden has conceded that she has no direct evidence of discrimination. *See Basden's Dep.* (2) p. 46.  She has also admitted that she was not eligible for leave under the FMLA, and PTI has given the legitimate, nondiscriminatory reason for Basden's termination which was in accordance with its policies.

To proceed under the indirect method of proof, an employee "'must show that after taking [or requesting] FMLA leave (the protected activity) he was treated less favorably than other similarly situated employees who did not take FMLA leave, even though he was performing his job in a satisfactory manner.'"  *Id.* at 482 (quoting *Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 951 (7th Cir. 2006)).

> 'To determine whether two employees are directly comparable, a court looks at all the relevant factors, which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications – provided the employer considered these latter factors in making the personnel decision.'

*Hull v. Stoughton Trailers, LLC*, 445 F.3d at 952 (quoting *Ajayi v. Aramark Bus Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)).

23

Any claim under the indirect method of proof also fails because Basden was not eligible for leave under the FMLA, and she does not have any evidence to show that another similarly situated employee was treated differently.

*VII.  Conclusion*

For these reasons, and the other foregoing reasons herein, the Defendant respectfully requests that judgment be entered against the Plaintiff and in favor of the Defendant, that Defendant's Motion for Summary Judgment be granted, for costs, and for all other appropriate relief in the premises.

Respectfully Submitted,

JONES • WALLACE, LLC

By  */s/ Robert W. Rock*
Robert W. Rock
Attorney No. 14060-48
420 Main Street, Suite 1600
P.O. Box 1065
Evansville, IN 47706
Telephone (812) 402-1600
Fax (812) 402-7977
Email rrock@joneswallace.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading or paper has been filed with the Court through the Court's electronic filing system, and served upon the following persons electronically through the Court's electronic filing system on this 7th day of January, 2011:

Keith A. Sermersheim
Rudolph, Fine, Porter & Johnson, LLP
kas@rfpj.com

Stacy K. Newton, Esq.
Rudolph, Fine, Porter & Johnson, LLP
skn@rfpj.com

/s/ Robert W. Rock
Robert W. Rock
Attorney No. 14060-48
Jones Wallace, LLC
420 Main Street, Suite 1600
P.O. Box 1065
Evansville, Indiana 47706
Telephone (812) 402-1600
Fax (812) 402-7977
Email rrock@joneswallace.com