**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

| | |
|---|---|
| TERRI BASDEN, | ) |
| | ) |
|        Plaintiff, | ) |
| vs. | ) CASE NO. 3:10-CV-00002-WTL-WGH |
| | ) |
| PROFESSIONAL TRANSPORTATION, | ) |
| INC. | ) |
| | ) |
|        Defendant. | ) |

## SUMMARY JUDGMENT REPLY

Comes now the Defendant, Professional Transportation, Inc., (hereinafter "PTI") by counsel, Paul J. Wallace and Robert W. Rock of Jones • Wallace, LLC, and submits the following Reply Brief in support of its Motion for Summary Judgment and in response to the Plaintiff's, Terri Basden (hereinafter "Basden") Response in Opposition to Summary Judgment.  In addition to the materials previously designated, Defendant specifically designates additional portions of the depositions of Theresa Kirk and George Acuff and the following declarations:

      1.    The Second Declaration of Theresa Kirk; and

      2.    The Declaration of David Wilson.[1]

*I. Introduction*

Although in her Response in Opposition to Summary Judgment, Basden stated that her lawsuit rested on only three (3) claims, it appears she seeks relief under the following four (4) theories: (1) failure to accommodate, pursuant to the ADA; (2)

---

[1] *See Beck v. Univ. of Wisconsin Bd. Of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) (where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers-both briefs and affidavits-may properly address those issues).

disability discrimination (indirect method)[2]; (3) ADA retaliation; and (4) FMLA interference[3]. Basden has not designated any evidence to the Court which establishes that there is a genuine issue of material fact which precludes summary judgment. She has failed to establish a *prima facie* case to support any of her theories of recovery, and she has not supplied evidence sufficient to allow a jury to render a verdict in her favor. Therefore, PTI respectfully requests the Court grant its Motion for Summary Judgment.

Additionally, in her Response in Opposition to Summary Judgment, Basden relied on impermissible and irrelevant evidence which should be stricken. The material evidence is un-contradicted, and there is no genuine issue of material fact precluding summary judgment.

### II.  Motion to Strike[4]

PTI, pursuant to FRCP 56(e), moves the Court to strike irrelevant and immaterial evidence set forth in Basden's summary judgment response along with opinions or conclusions which are not based upon the evidence and which cannot create a genuine issue of material fact.

### A.  Relevancy and Materiality

In the introduction of Basden's summary judgment response she includes a long quote from her deposition wherein she makes reference to an unemployment claim. *See Plaintiff's Response to Summary Judgment* (Dkt. 34), pp. 1-2. The substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-

---

[2] Basden has conceded that there is no direct evidence of disability discrimination. *See Basden's Dep.* (2) p. 46. Therefore, her disability discrimination theory must be analyzed under the indirect method of proof.
[3] Basden made it clear in her response that she is not asserting an FMLA retaliation claim. *See Plaintiff's Response to Summary Judgment* (Dkt. 34), p. 9.
[4] L.R. 56.1(f) requires that disputes regarding the admissibility of evidence be addressed in the summary judgment briefs.

48, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  "Only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of

summary judgment.  Factual disputes that are irrelevant or unnecessary will not be

counted."  *Id.*; and *Feaster v. U.S.*, 311 F.Supp. 1368, 1369 (D.C. Kan. 1969) (the court

will not consider factual issues which are irrelevant as matters of law).  "Evidence is

relevant if it has 'any tendency to make the existence of any fact that is of consequence

to the determination of the action more probable or less probable.'"  *Goff v. Continental

Oil Co.*, 678 F.2d 593, 596 (5th Cir. 1982), *overruled on other grounds* (alleged incidents

of discrimination against other persons not supervised by the same person is not

relevant to an individual's claim of race discrimination).

The only evidence that is relevant to this matter is: (1) whether Basden ever

initiated the interactive process to obtain an accommodation; (2) evidence of indirect

discrimination or retaliation; (3) evidence related to whether Basden was meeting PTI's

legitimate expectations at the time of her termination; and (4) whether there are other

similarly situated employees to Basden, who were not members of her protected class,

who were treated more favorably.  Anything else is a waste of the Court's time,

including whether Basden litigated an unemployment claim.

### B.  Speculation and Improper Opinion Evidence

The evidence identified by the non-moving party in opposition to summary

judgment must be competent evidence of a type otherwise admissible at trial.  *Bombard

v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).  *See also Butts v.

Aurora Health Care, Inc.*, 387 F.3d 921, 924-25 (7th Cir. 2004) (the non-movant must

present definite, competent evidence in rebuttal; self-serving statements in affidavits

without factual support in the record carry no weight on summary judgment).  Neither

3

arguments of counsel nor allegations in memoranda qualify as evidentiary materials for purposes of a motion for summary judgment. *O'Brien v. Town of Agawam*, 482 F.Supp.2d 115, 119 (D. Mass. 2007) (quoting *Kelly v. United States*, 924 F.2d 355, 357 (1st Cir. 1991) (a non-movant cannot avoid summary judgment by resting upon mere allegations in a lawyer's brief)); and *Richards-Wilcox, Inc. v. Cummins*, 700 N.E.2d 496, 499 n.3 (Ind.Ct.App. 1998). "[I]nferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc). "Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." *Keri v. Board of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

In her summary judgment response, Basden speculated that twenty-three (23) employees were given breaks or not subjected to the mandatory application of PTI's attendance policy. *See Plaintiff's Response to Summary Judgment* (Dkt. 34), pp. 7-9. However, the only manner in which to support this claim would be to examine each of the identified employees' personnel files along with their attendance records. Basden's counsel claims that these twenty-three (23) employees were given breaks by reviewing a disciplinary list which was produced in discovery. Moreover, Basden's argument failed to account for changes in the policy which originally applied an employee's anniversary date to thereafter employing a rolling calendar to determine the proper sanction to be applied. Speculation and an unsupported allegation set forth in a memorandum do not qualify as evidentiary material and by its nature cannot create a

4

genuine issue of material fact for summary judgment purposes.  Therefore, it should be stricken.

### III.  Reply Argument

#### A.  Additional Material Facts

Theresa Kirk, the Assistant Dispatch Manager for PTI, who tracks and monitors attendance for all Dispatch Center employees, reviewed the conclusions and opinions offered in opposition to PTI's summary judgment motion regarding the attendance and disciplinary records of the following employees, along with each of the subject employee's personnel files: Amanda Alexander, Arielle Alvey, Kelly Anderson, Donna Brown, Casey Burns, Derek Burris, Christina Donofrio, Shawn Eaden, Tammy Ellis-Baker, Gina Garrett, Nicole Geske, Matthew Hoy, Shane Hunter, David Kinney, Alicia Lankford, Rebecca Leeds, Lindsay Martin, Amber Miles, Jinger Pipper, Lisa Sanders, Tiffany Smallwood, Christina Tennes, and Belinda Thorsen.  *Kirk Declaration #2* ¶¶ 3-4. The following occurred for each of the subject employees:

a.       Amanda Alexander –  Amanda was given a verbal warning on May 18, 2007, and a written warning on June 6, 2007, for attendance policy violations, but these disciplinary measures were imposed pursuant to a prior attendance policy that used each individual employee's anniversary date or date of hire to determine the number of attendance violations in a given year as calculated from their anniversary date.  In Amanda's case, her anniversary date was July 22, 2006; therefore, on July 22, 2007, Amanda's attendance record began anew.  Amanda, therefore, is not similar to the Plaintiff, Terri Basden, because the discipline imposed in her case was imposed under a different standard;

b.      Arielle Alvey – Arielle was a probationary employee (known as the introductory period of an employee who has not been employed more than ninety (90) days) subject to different rules and standards than Basden.  In fact, the attendance policy for probationary employees is more rigorous than for employees who have been employed past their introductory period.  Arielle, therefore, is not similar to Basden because the discipline imposed in her case was imposed under a different standard;

c.      Kelly Anderson – On February 7, 2008, the attendance policy was amended wherein the anniversary date was no longer used to determine the number of attendance policy violations.  PTI began using a rolling calendar wherein it looked back twelve (12) months from the date of each violation in order to determine the appropriate action to be taken.  Therefore, depending on when a new violation occurred, older violations may no longer be within twelve (12) months of the new violation.  This is what occurred in Kelly's case, and when discipline was imposed it was at the appropriate level for the number of attendance violations she had within twelve (12) months of each incident.  Thus, it is possible under the amended policy that an employee could receive numerous verbal warnings or the same level of discipline previously imposed in succession depending on the date of their new violations;

d.      Donna Brown – The discipline imposed in Donna's case is appropriate, pursuant to PTI's attendance policy, under the rolling calendar method of determining the correct sanction to impose similar to how the policy amendment impacted other employees as described above, like Kelly Anderson;

e.      Casey Burns – The sequence of discipline was imposed mistakenly under the amended attendance policy in that Casey was disciplined twice, by two different supervisors, for the same incident of absence that occurred on August 15, 2008,

6

namely, she was given a verbal warning on August 16, 2008, and a written warning on

August 19, 2008.  This employee was eventually terminated in 2010 for attendance

violations;

      f.      Derek Burris – The discipline imposed in Derek's case is appropriate,

pursuant to PTI's attendance policy, under the rolling calendar method of determining

the correct sanction to impose similar to how the policy amendment impacted other

employees as described above, like Kelly Anderson and Donna Brown;

      g.      Christina Donofrio – Christina was hired on August 15, 2007.  On October

9, 2007, she was given a ninety (90) day notice for excessive absences during her

introductory period.  In November, she was given a written warning (this should have

been a verbal warning).  On January 5, 2007, Christina was given a written warning,

which was correct.  On February 3, 2008, she was suspended for two (2) days for

excessive absences.  On February 14, 2008, she was absent from work, her eighth (8th)

incident of absence; therefore, she was terminated for excessive absences on that

same day;

      h.      Shawn Eaden – Shawn was hired on January 10, 2008, given a written

warning January 23, 2008, and terminated on January 23, 2008, while still in his

introductory period;

      i.      Tammy Ellis-Baker – The discipline imposed in Tammy's case is

appropriate, pursuant to PTI's attendance policy, under the rolling calendar method of

determining the correct sanction to impose similar to how the policy amendment

impacted other employees as described above, like Kelly Anderson, Donna Brown and

Derek Burris;

j.      Gina Garrett – The sequence of discipline imposed regarding Gina occurred, in part, under the prior attendance policy that used each individual employee's anniversary date and some of her discipline was imposed under the amended policy that employed a rolling calendar.  In any event, the discipline was imposed in accordance with the terms of the policy which was in effect at the time of imposition and eventually led to her termination.  Gina, therefore, is not similar to Basden because the discipline imposed in her case was imposed, in part, under a different standard;

k.      Nicole Geske – The sequence of discipline imposed regarding Nicole occurred under the amended policy that employed a rolling calendar and it was imposed in accordance with the terms of the policy and eventually led to her termination;

l.      Matthew Hoy – The sequence of discipline imposed regarding Matthew occurred under the amended policy that employed a rolling calendar and it was imposed in accordance with the terms of the policy and eventually led to his termination;

m.      Shane Hunter – Shane was hired on April 15, 2006, given a verbal warning on November 29, 2006, a written warning on December 3, 2006, and suspended on March 19, 2007.  He then reached his anniversary date on April 15, 2007, which gave him a clean slate for purposes of the attendance policy in force at that time.  Subsequently, he was given a verbal warning on June 16, 2007, a written warning on August 27, 2007, suspended September 29, 2007, and terminated on May 20, 2008, for attendance policy violations;

n.      David Kinney – David was hired on October 11, 2007, but the discipline imposed in his case was not for attendance policy violations.  He was disciplined for violating other rules of PTI, e.g., rude and vulgar comments and missing a shift meeting.

8

David, therefore, is not similar to Basden because the discipline imposed in his case was imposed under a different standard;

o.      Alicia Lankford – the sequence of discipline was imposed mistakenly under the attendance policy.  Alicia was hired on June 18, 2007.  On October 3, 2007, she received a verbal warning, and a written warning on December 14, 2007.  She was mistakenly given a written warning instead of a suspension on January 4, 2008, and she quit shortly thereafter on January 8, 2008.  She never reached the level of eight (8) absences on her employee record which would have required termination;

p.      Rebecca Leeds – Rebecca was hired on December 9, 2006.  On August 21, 2007, Rebecca mistakenly received a verbal warning.  For that reason she correctly received a verbal warning on November 9, 2007, after she had an incident of absence. After this point in time the attendance policy was changed adopting the rolling calendar and Rebecca was correctly given a verbal warning on April 28, 2008, a verbal warning on October 1, 2008, a suspension on March 8, 2009, and terminated on March 15, 2011, all pursuant to the attendance policy;

q.      Lindsay Martin – The sequence of discipline was imposed mistakenly under the attendance policy in that Lindsay did not have an incident of absence in order to support the suspension shown in her file on March 26, 2008.  She did, however, have another incident of absence which led to her suspension on April 27, 2008, and ultimately she was terminated on May 7, 2008, for attendance policy violations;

r.      Amber Miles – Amber was hired on February 27, 2004, given a verbal and written warning on November 23, 2005, a suspension on January 9, 2006, a verbal warning on November 21, 2006, a written warning on December 11, 2006, a suspension on January 16, 2007, a verbal waning on May 15, 2007, a written warning on June 20,

9

2007, and terminated for insubordination on June 28, 2007.  All of these disciplinary measures were imposed pursuant to the prior attendance policy that used Amber's date of hire to determine the number of attendance violations in a given year as calculated from her anniversary date.  On February 27, 2004, Amber's attendance record began anew.  Amber, therefore, is not similar to Basden because the discipline imposed in her case was imposed under a different standard;

     s.     Jinger Pipper – Jinger was hired on April 1, 2006, given a verbal warning on October 15, 2006, a written warning on October 24, 2006, a suspension on November 15, 2006, mistakenly given a written warning on April 19, 2007 (because her hire date was April 1, 2006 – she should not have received any discipline because she began anew on April 1, 2007), a verbal warning on June 28, 2007, that she should not have received, properly given a verbal warning on November 15, 2007, and properly given a written warning on January 29, 2008.  She was to be suspended on February 5, 2008, but she never returned to work;

     t.     Lisa Sanders – Lisa was hired on April 6, 2007.  She was correctly given two (2) verbal warnings on July 5, 2008 and September 30, 2008, in accord with the rolling calendar employed by the attendance policy;

     u.     Tiffany Smallwood – Tiffany was hired on November 4, 2004.  All of Tiffany's discipline was correctly imposed under the attendance policy's previous application of the employee's anniversary date to determine the sanction depending on the number of absences existing from the anniversary date.  Tiffany, therefore, is not similar to Basden because the discipline imposed in her case was imposed under a different standard;

v.      Christina Tennes – Christina was hired on October 8, 2007.  During her introductory period she received a written warning in accordance with the attendance policy on December 15, 2007, for introductory employees.  Thereafter, in accordance with the attendance policy she received a verbal warning on February 11, 2008, a written warning on March 4, 2008, a suspension on March 20, 2008, and she was terminated on March 26, 2008, for attendance policy violations; and

w.      Belinda Thorsen – Belinda was hired on May 9, 2006.  On August 15, 2007, Belinda mistakenly received a verbal warning which she should not have received.  For that reason she correctly received a verbal warning on September 20, 2007, after she had an incident of absence.  Thereafter all of her discipline was in accord with the attendance policy, namely, she was given a written warning on September 21, 2007, a suspension on September 27, 2007, a second suspension on March 26, 2008, due to the rolling calendar, and she was terminated on April 16, 2008. *Kirk Declaration #2* ¶ 4.

Of these 23 employees, only Kelly Anderson, Tammy Ellis-Baker, and Lisa Sanders are still employed at PTI.  *Kirk Declaration #2* ¶ 5.  All of these employees were treated the same as Basden in terms of the mandatory application of PTI's attendance and disciplinary policies.  *Kirk Declaration #2* ¶ 6.  Out of one hundred seventy-seven (177) employees only one (1) employee, Alicia Lankford, mistakenly received a lesser sanction than prescribed by the attendance policy.  *Kirk Declaration #2* ¶ 6.  However, none of these employees were given "breaks" nor was the attendance or disciplinary policy relaxed in their favor.  *Kirk Declaration #2* ¶ 6.  In the other instances of mistakes, discipline was imposed when not warranted, that is, it was more onerous than permitted by the policy.  *Kirk Declaration #2* ¶ 6.  In these cases the same level of discipline was

11

imposed at the next event of a violation.  *Kirk Declaration #2* ¶ 6.  In order to prevent mistakes in the application of discipline for attendance violations, in January of 2008, PTI no longer permitted shift supervisors to impose discipline for attendance violations. *Kirk Declaration #2* ¶ 6.  From that point forward, attendance violations were dealt with by Theresa Kirk, and there have been no more mistakes in the imposition of discipline since that change in policy.  *Kirk Declaration #2* ¶ 6.

PTI's attendance policy is applied neutrally or in a general fashion to all incidents of absence from work.  *Kirk Declaration #2* ¶ 7.  In other words, the policy only considered the reason for the absence to determine whether an employee could aggregate more than one (1) missed shift from work into one incident of absence, but the policy would not tolerate more than seven (7) incidents of absences in one (1) year regardless of the reason or cause of the accumulated incidents.  *Kirk Declaration #2* ¶ 7.  For all of the discipline discussed regarding the twenty-three (23) employees at issue, it was imposed simply because violations of the attendance policy had occurred. *Kirk Declaration #2* ¶ 8.  No consideration was given to the employee's gender, race, health or whether or not the employee had a physical impairment or disability.  *Kirk Declaration #2* ¶ 8.

Although the positions of "closer" and dispatcher are treated the same by PTI and dispatchers do both duties, there tends to be more typing with the dispatcher function as compared to a closer.  *Kirk Declaration #2* ¶ 9.  After Basden's request was granted to move to dispatcher, she was not moved back to being a closer; nor did Basden ever complain that her move from closer to dispatcher had been reversed by another supervisor.  *Kirk Declaration #2* ¶ 9.

Basden never provided a note in support of her absence on May 22, 2008, or for any of her subsequent absences, and she never spoke to Theresa Kirk about her request for personal leave of May 23, 2008, or told Theresa Kirk why she wanted a personal leave of absence. *Kirk Declaration #2* ¶ 10. Basden was terminated solely because of, and for no other reason than, excessive absenteeism in violation of PTI's attendance policies and the attendance polices of United Companies. *Kirk Declaration #2* ¶ 11.

Informational posters regarding the protections and benefits of the ADA and FMLA are posted for the benefit of PTI's employees in the employee break room. *Acuff Dep.* pp. 18-19. At no time was David Wilson, PTI's Payroll Manager, ever Basden's supervisor nor did he work in PTI's human resources department, and for those reasons, he would not have counseled her regarding an application for a personal leave of absence. *Wilson Declaration* ¶¶ 2-3. David Wilson did not suggest to Basden that she should apply or file for a personal leave of absence, and he did not provide her with a form in order to make a request for a leave of absence. *Wilson Declaration* ¶ 4. In fact, David Wilson has never met with Basden personally. *Wilson Declaration* ¶ 5. After her termination, he sent Basden a letter on June 6, 2008, informing her of her eligibility under COBRA. *Wilson Declaration* ¶ 5. He also had some telephone conversations with her concerning COBRA after he sent her the June 6, 2008 letter, but those conversations did not involve PTI's personal leave of absence policy. *Wilson Declaration* ¶ 5.

13

## B.  Argument

### 1. Failure to Accommodate

In order to prevail on a claim of failure to accommodate a known disability, a plaintiff is required to prove that: "'(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability.'"  *Mobley v. Allstate Insurance Co.*, 531 F.3d 539, 545 (7th Cir. 2008) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)); and *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001).

Basden claims that PTI failed to accommodate her by not granting her request of May 23, 2008, for a personal leave of absence, pursuant to PTI's policy.[5]  First and foremost, Basden did not make a request for reasonable accommodation.  Basden applied for a personal leave of absence pursuant to PTI's policies, not a reasonable accommodation.  PTI did not understand her request to be anything more than a common request.  To assign or infer to PTI that it should have understood her request as a request pursuant to the ADA belies the facts of this case and places the employer in a position of speculating or guessing the meaning of the actions of its employees.  It is un-contradicted that Basden never told anyone that she wanted to be accommodated pursuant to the ADA.  Basden is asking this Court to wave a wand over her request for personal leave and turn it into a request for an accommodation.  Such an outcome would be unjust and unsupported by the facts.

---

[5] Although Basden quibbles about it, it is un-contradicted that both of Basden's other requests were granted – her move to dispatcher from closer and to part-time employment.  Moreover, although ADA requires employers to accommodate qualified individuals, it does require that employees are entitled to the accommodation they prefer.  *Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000).

To conjure this result, Basden argues for an expansive reading or application of *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281 (7th Cir. 1996), by stretching its holding to mean that the interactive process required PTI to guess her intentions.  However, *Bultemeyer* is factually distinguished from this case because the Plaintiff in that case was suffering from serious mental illness, and the Court held that the employer should meet such an employee half-way.  *Id.* at 1285.  In this case Basden was not suffering from a mental illness, and as the Court recognized in *Bultemeyer*, "[a]n employee's request for reasonable accommodation requires a <u>great deal</u> of communication between the employee and employer."  *Id.* [emphasis added].  There was no communication between Basden and PTI.  Pursuant to PTI's policies, a request for personal leave is submitted to the employee's supervisor.  In this case, the relevant supervisor was George Acuff, the Dispatch Manager.  Basden never communicated or spoke to Mr. Acuff regarding her leave request (*see Acuff Dep.* p. 37:16-19), and in fact, Mr. Acuff simply received the request form in his in-box (s*ee Acuff Dep.* p. 41:8-11).  Moreover, Basden did not support her request with a medical opinion or note from a physician (s*ee Kirk Declaration #2* ¶ 10).  As the facts demonstrate, there was very little, if any, communication between Basden and her supervisor concerning the basis for her attendance violations or regarding her leave request.  *Id.*  Basden failed to initiate the interactive process contemplated when requesting a reasonable accommodation.  *See Beck v. Univ. of Wisconsin Bd. Of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) (an employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations); and *Jovanovic v. In-Sink-Erator Div. of Emerson Electric Co.*, 201

15

F.3d 894, 899 (7th Cir. 2000).  And certainly, there is no evidence that PTI obstructed the interactive process or acted in bad faith.

Basden's failure to accommodate theory also fails because: (1) her request was not reasonable and would have placed an undue hardship on PTI[6]; and (2) at the relevant time, May 22, 2008, she was not a qualified individual with a disability.  The ADA does not require an employer to accommodate a qualified individual by allowing them to not work.  *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 380-81 (7th Cir. 2003).  "'[I]f one is not able to be at work, one cannot be a qualified individual.'"  *Id.* at 381 (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) (summary judgment in favor of the employer affirmed)).  Spotty attendance may also show that an individual is not a qualified individual under the ADA.  *Id.*  Therefore, Basden's request to not come to work is not reasonable.

PTI did not know that Basden was suffering from a disability.  It is un-contradicted that Basden had not been diagnosed with Multiple Sclerosis ("MS") at this time, and it would be unfair and unprecedented to infer that PTI should have known that Basden had MS from the generalized complaints received or that she was being tested for MS.  PTI and its employees are not physicians and cannot be expected to diagnose or surmise from the small amount of information provided that she was suffering from MS.  Moreover, much of the description that Basden gives of her condition was not known by PTI or its employees, and she simply speculates that they knew this information and *ergo* PTI should have known she had MS.

---

[6] *See Jovanovic v. In-Sink-Erator Div. of Emerson Electric Co.*, *supra*, 201 F.3d at 899 n. 9 (a request for an open-ended work schedule is a request for an unreasonable accommodation).

Moreover, she could not perform the essential functions of the job as a dispatcher.  Recall that attendance by Dispatch employees is critical and essential to the mission and service provided by the Dispatch Center to its customers.  *Acuff Declaration* ¶ 5; *Kirk Declaration* ¶ 5; *Davis Declaration* ¶ 5; *Greulich Declaration* ¶ 5.  *See Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001) (to determine the essential functions of a position, a court may consider evidence of the employer's judgment of a position); and 29 C.F.R. § 1630.2(n)(3).  Basden's attendance record and her inability to work in May of 2008 prevented her from fulfilling this essential function of the position at issue.  *See Jovanovic v. In-Sink-Erator Div. of Emerson Electric Co.*, *supra*, 201 F.3d at 899 (an erratic attendance record makes it impossible for an employee to perform the essential functions of the job - regular attendance is usually an essential function in most every employment setting).  Basden had already been moved to part-time employment after she supported her request with a note from her physician, and yet she was still unable to fulfill the essential function of attendance for her part-time position.  She simply stated on her own, without the support of a medical provider that she wanted time off; time that she was not entitled to take off under PTI's policies, the FMLA or pursuant to the ADA.

Lastly, Basden did not suffer an adverse employment action as a result of her claimed disability, which was unknown to PTI.  Basden was terminated for violating PTI's attendance policy.  Basden did not show for work on May 22, 2008 (*see Kirk Dep.* p. 68); and contrary to her assertions that she always provided a note or excuse from her physician (*see Plaintiff's Response to Summary Judgment* (Dkt. 34), pp. 1 & 3), she did not provide any reason for her absence.  *See Kirk Declaration #2* ¶ 10.  This was her seventh (7th) incident of absence in her first year of employment with PTI.

Therefore, she was suspended for three (3) days, May 23, 24 and 25.  *See Kirk Dep.* p.

69.  She did not return to work on May 26, 2008, and she had no excuse for not

returning on this date from her physician.  *Id.*  This was her eighth (8th) incident of

absence which called for her termination in accordance with PTI's attendance policy.

### 2. Disability Discrimination

Due to Basden employing the indirect method of proof, she must produce

evidence that suggests that, but for her alleged disability, PTI would not have taken

adverse action against her.  *Leffel v. Valley Financial Services*, 113 F.3d 787, 794 (7th

Cir. 1997).  Under the *McDonnell Douglas* framework, Basden must satisfy and prove

the following elements: (1) that she is disabled within the meaning of the ADA, (2) that

her work performance met PTI's legitimate expectations, (3) that she suffered an

adverse employment action, and (4) that similarly situated employees received more

favorable treatment.  *Hoffman v. Caterpillar, Inc.*, *supra*, 256 F.3d at 572; and *Leffel v.

Valley Financial Services*, *supra*, 113 F.3d at 794.  If Basden succeeds in proving her

prima facie case of discrimination, then PTI must articulate a legitimate,

nondiscriminatory reason for discharging her.  *Leffel v. Valley Financial Services*, 113

F.3d at 792.  If PTI sets forth a legitimate, nondiscriminatory reason for its action, then

Basden must prove that PTI's proferred reason is a pretext or merely a cover for its

decision.  *Id.*

As discussed above, Basden was not a qualified individual with a disability under

the ADA.  Basden had not been diagnosed with MS.  She could not perform the

essential functions of the job as a dispatcher which required attendance.  Her work

performance did not meet PTI's expectations.  PTI clearly promulgated its attendance

policy to Basden, but she simply failed to submit to its terms.  She did not suffer an

adverse employment action related to her health condition.  The action taken against her was purely for her attendance policy violations.  Lastly, she failed to identify a similarly situated employee who received more favorable treatment.  Of the twenty-three (23) employees identified by her in her summary judgment response, none received a break or less onerous discipline.  *See Kirk Declaration #2* ¶ 6.  Out of one hundred seventy-seven (177) employees only one (1) employee was mistakenly disciplined with a lesser sanction, but this employee is not similar to Basden because she never reached an eighth (8th) incident of absence requiring discharge.  Therefore, Basden failed to establish a prima facie case of discrimination.  Moreover, PTI gave its "legitimate, nondiscriminatory reason" for discharging her (*see Kirk Declaration #2* ¶ 11) which Basden has not shown was a pretext or lie to cover-up an ulterior or illegal motive.  *See Ellis v. United Parcel Service, Inc.*, 523 F.3d 823, 828 (7th Cir. 2008) (an employer's explanation is pretext only if it is a lie).

### 3. ADA Retaliation

Basden did not suffer an adverse action related to her suspected medical condition or any action related or associated with the ADA.  She has no evidence to support the conclusion or inference that there is a causal connection between her termination and her suspected condition.  The evidence is clear and unambiguous that she was terminated for not showing up for work and for violating PTI's attendance policy.  This is what she was clearly told by George Acuff in their phone conversation of May 29, 2008.  *See Basden's Dep.* pp. 94-95, 137; *Basden's Dep.* (2) p. 44.

*4. FMLA Interference*

Basden was required to prove by a preponderance of the evidence that she is entitled to leave under the FMLA.  *Haefling v. United Parcel Svc.*, 169 F.3d 494, 499 (7th Cir. 1999).  Basden must prove that: (1) she was eligible for the FMLA's protections, (2) PTI was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) PTI denied her FMLA benefits to which she was entitled.  *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006); and *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (summary judgment granted in favor of the employer).

Basden admitted that she was not eligible for the protections of the FMLA.  *See Plaintiff's Response to Summary Judgment* (Dkt. 34), p. 15.  Likewise, she was not entitled to leave under the FMLA as she did not provide sufficient notice of her intent to take leave.  In fact, her request for personal leave came after her last day of work at PTI (i.e., May 20, 2008).  Lastly, PTI did not deny a request for such leave because she was not eligible to make such a request.  Therefore, her FMLA interference claim fails as a matter of law.

*IV.  Conclusion*

For these reasons, and the other foregoing reasons herein, the Defendant respectfully requests that judgment be entered against the Plaintiff and in favor of the Defendant, that Defendant's Motion for Summary Judgment be granted, for costs, and for all other appropriate relief in the premises.

Respectfully Submitted,

JONES • WALLACE, LLC

By: /s/  Robert W. Rock
      Robert W. Rock
      Attorney No. 14060-48
      420 Main Street, Suite 1600
      P.O. Box 1065
      Evansville, Indiana 47706
      Phone:  (812) 402-1600
      Fax:  (812) 402-7977

      Attorneys for Defendant, Professional
      Transportation, Inc.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading or paper has been filed with the Court through the Court's electronic filing system, and served upon the following persons electronically through the Court's electronic filing system on this 2nd day of May, 2011:

Keith A. Sermersheim
Rudolph, Fine, Porter & Johnson, LLP
kas@rfpj.com

Stacy K. Newton, Esq.
Rudolph, Fine, Porter & Johnson, LLP
skn@rfpj.com

/s/  Robert W. Rock