**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

| | |
|---|---|
| TERRI BASDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 3:10-cv-02-WTL-WGH |
| ) | |
| PROFESSIONAL TRANSPORTATION, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a motion for summary judgment filed by Defendant Professional Transportation, Inc. ("PTI"). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations,

that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. FACTUAL BACKGROUND

The facts of record viewed in the light most favorable to Plaintiff Terri Basden are as follow.

Defendant PTI is in the business of providing ground transportation to the railroad industry. Plaintiff Terri Basden was employed by PTI beginning on June 29, 2007, as a dispatcher in PTI's Dispatch Center. The Dispatch Center dispatches drivers and coordinates the ground transportation for PTI's railroad customers 24 hours a day. Because of the nature of the service provided by the Dispatch Center, attendance by the employees in that area is essential. Accordingly, Dispatch Center employees are subject to a supplemental attendance policy ("SAP") that is set forth in a document entitled "Addendum to the United Companies[1] Employee Handbook."

Pursuant to the SAP, absenteeism is defined as an incident away from work. An "incident' includes missing an entire shift, missing more than four hours of a shift, or missing up to five consecutive shifts for the same reason, such as an illness that lasts several days. The SAP sets forth the following discipline schedule for excessive absenteeism: (1) upon the fifth incident within a year, a verbal warning may be given; (2) upon the sixth incident within a year, a written

---

[1] PTI is part of the United Companies, and its employees are subject to the rules and policies set forth in the United Companies Employee Handbook. Basden did not receive a copy of the United Companies Employee Handbook from PTI, but she did receive a copy of the SAP.

warning may be given; (3) upon the seventh incident within a year, a three-day suspension may be given; and (4) upon the eighth incident within a year, the employee may be terminated. In calculating the number of "incidents" an employee has accrued during a year, the SAP does not distinguish between absences for illnesses documented by a physician's note and absences for other reasons.

On January 16, 2008, Basden was treated at an emergency room after becoming dizzy and falling in her home. The attending physician referred Basden to a neurologist after a CT scan revealed some abnormalities suggesting the possibility of multiple sclerosis ("MS"). Basden had another incident of dizziness and returned to the emergency room on February 1, 2008. She was seen by a neurologist and underwent a spinal tap in March, after which the neurologist told Basden that he was "pretty confident" that she had MS and referred her to an MS specialist to confirm the diagnosis. Basden's appointment with the MS specialist was scheduled for June 23, 2008; the specialist diagnosed her with MS and began treatment.

In the meantime, on May 1, 2008, Basden was given a written warning for excessive absenteeism. At that point, she had missed work as follows:

- Incident 1: Absent July 24-25, 2007

- Incident 2: Absent September 29-30, 2007

- Incident 3: Absent January 14-17, 2008

- Incident 4: Absent February 1, 2008

- Incident 5: Absent March 13-15, 2008, resulting in a verbal warning per the SAP

- Incident 6: Absent April 7-8 and April 11-14 2008, resulting in the

written warning referenced above

Beginning with the January 2008 incident, Basden provided PTI with a physician's note after each absence. The note regarding her April 2008 absences indicated that she was being "worked up" for MS and was experiencing dizziness.

Basden requested two accommodations because of her health issues. Because of numbness in her hands–which may have been related to MS or may have been an unrelated problem–Basden asked at some point that she not be assigned to "closer" duties that required a great deal of typing. PTI inconsistently complied with that request. In March 2008, Basden asked to be moved to a part-time position that became available because her MS symptoms had made it difficult to work full-time, but that position was given to a relative of a supervisor instead of to Basden. On May 1, 2008, PTI granted Basden's second request–which was accompanied by a note from her physician–that she move from full-time to part-time work.

Switching to a part-time schedule was not a cure-all, and Basden again missed work on May 22, 2008. Because it was her eighth incident, she was suspended for three days without pay per the SAP. Thus, she was suspended on May 23rd, 24th, and 25th. During her suspension, on May 23, 2008, Basden submitted a written request for a 30-day personal leave of absence, which she understood would be without pay. On the request form, Basden indicated that the leave was necessary because of "complications due to medical illness (MS)." Although the leave form indicated that it was to be used by employees with at least one year of service, which Basden did not have, Basden hoped that because she was so close to her anniversary date PTI would grant her leave request.

Basden was scheduled to return to work after her suspension on May 26, 2008. Because

she had submitted a leave request–and although she had not yet received a response to that request–Basden did not return to work on May 26th and did not call in sick. Basden believes that her absence on May 26th should have been considered a continuation of her absence that began on May 22nd rather than a new absence; PTI takes the position that the intervening suspension rendered the absence on May 26th a new incident.

On May 27, 2008, George Acuff, the Dispatch Manager and Basden's supervisor, denied Basden's leave request because she had not been a PTI employee for at least a year and therefore was not eligible for a personal leave of absence pursuant to PTI policy. When Basden received notice of the denial on May 29th, she called Acuff, who informed her that she had been terminated because she did not return to work on May 26th.

### III. **DISCUSSION**

As Basden made clear in her deposition–quoted at length at the outset of her brief in opposition to the instant motion–she believes that PTI's attendance policy is unfair because it penalizes people who have legitimate and documented medical problems, treating absences for those problems "like any other absence." Basden, not unreasonably, believes that "there should be some type of policy in place for people who have legitimate illness where they don't have to worry about losing their job because they're too sick to come to work." Basden is not alone in her belief; indeed, federal law addresses the issue raised by Basden in the two statutes upon which her claims in this case are based–the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). There are limits to the types of situations that are covered by each statute, however; limits that arose out of, at least in part, Congress's recognition of the possible conflict between the desire to protect employees and the needs of employers who

have work that needs to be done. The initial–and, as it turns out, dispositive–question before the Court in this case, then, is whether Basden's situation was such that she was entitled to protection under the ADA and/or the FMLA.

### A. Basden's Claims Under the ADA

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures [and] the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). "Disability" for ADA purpose is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Basden asserts two claims under the ADA; first, that PTI failed to reasonably accommodate her disability and, second, that PTI terminated her employment because of her disability or in retaliation for seeking accommodation. With regard to both of these claims, Basden bears the burden of showing that she falls within the scope of the ADA's provisions, *see Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 748 (7th Cir. 2011), and, therefore, in order to survive summary judgment she must point to admissible evidence from which a reasonable jury could determine that at the time of her termination she was "an individual with a disability who, with or without reasonable accommodation, [could] perform the essential functions of" her job at PTI. *See* 42 U.S.C. § 12111(8) (defining "qualified individual").

The Court has no trouble concluding that, based on the evidence of record, a reasonable jury could conclude that at the time of her termination Basden qualified as "an individual with a disability" as defined by the ADA because of the MS symptoms she was experiencing. However, being disabled is not enough; as Basden acknowledges, "[t]he ADA only protects a '*qualified* individual with a disability.'" *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir.

2001).

> To determine whether someone is a "qualified individual with a disability," we apply a two-step test. *See* 29 C.F.R. app. § 1630.2(m). "First, we consider whether 'the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.'" *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir.1996) (quoting 29 C.F.R. app. § 1630.2(m)). "If he does, then we must consider 'whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.' " *Id.* (quoting same).

*Basith*, 241F.3d at 927.

There is no dispute regarding the first step in this case; but for her health problems, Basden was qualified for and able to perform her job at PTI. With regard to the second step, Basden asserts that she would have been able to perform the essential functions of her part-time position at PTI if she had been given the 30-day leave of absence she requested. Basden's entire argument on this issue is as follows:

> Basden was capable of performing her job at PTI on a part time basis (the basis on which she worked prior to her termination) after receiving medical treatment from her specialist for her condition. Basden was not constantly absent from work from January 2008 until May 2008, her absences were sporadic and were not extended. (Kirk Dep. pp. 50-55; Exhibit K). All that PTI would have had to have done to retain Basden, a good employee, was to allow her to be off work for 30 days, without pay, so that she could begin treatment. Basden currently works a part time job as a receptionist at Tri-State Food Bank. (Basden Dep. II pp. 5-6). Now that Basden utilizes Rebif injections, Basden could perform the duties of her position at PTI, and PTI, who has the burden on this motion, has no evidence that she should not do so. Because there is a question of fact on this issue, it must be left to the jury.

Basden Brief at 11. Basden's suggestion that PTI has the burden of demonstrating that she would not have been able to perform her job if she had been given a 30-day leave of absence is incorrect. Rather, in order to avoid summary judgment, Basden has the burden of pointing to evidence from which a reasonable jury could find in her favor on this issue. *See, e.g., In re Airadigm Communications, Inc.*, 616 F.3d 642, 657 (7th Cir. 2010) (noting oft-repeated fact that "summary judgment is the 'put up or shut up' moment in the life of a case"). Basden has not

-7-

satisfied that burden.

"[I]n most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability. The fact is that in most cases, attendance at the job site is a basic requirement of most jobs." *EEOC v. Yellow Freight Sys. Inc.*, 253 F.3d 943, 948-49 (7th Cir.2001) (collecting cases). Here the evidence of record is undisputed that PTI considered good attendance to be essential to the dispatcher position held by Basden, and PTI made that fact clear in the SAP. Nonetheless, a leave of absence can, in certain circumstances, be a reasonable accommodation under the ADA. *See Haschmann v. Time Warner Entertainment Co.*,151 F.3d 591 (7th Cir.1998) (upholding jury determination that requested 2-4 week leave of absence during flare up of lupus was reasonable accommodation).

The problem with Basden's claim is that even assuming that the 30-day leave of absence she requested was a reasonable accommodation, she has presented no evidence that demonstrates that she would have been able to return to work and perform the essential functions of her job after thirty days. She testified in her deposition that the medication she is taking has made a big difference in her condition. Basden Dep. I at 52. However, she did not begin taking that medication until July 2008, more than 30 days after she was terminated by PTI, *id.* at 53, and the record is silent with regard to how long it took for Basden to see improvement from the medication such that she was able to return to work.[2] In the argument section quoted above Basden notes that she is now able to work part-time; however, she did not begin that job until June 2010, over two years after she was terminated by PTI. Therefore her ability to work at her

---

[2]In her deposition, Basden testified about another job she had following her termination from PTI. Basden Dep. I at 53. However, the deposition excerpts included in the record does not contain any information about when Basden held that job or for how long; the only information contained in the excerpt is that she missed about two weeks of work due to her MS while she had that job.

-8-

current job is irrelevant to the question of whether she could have worked at PTI following a 30-day leave of absence.

The record does not contain any evidence about Basden's ability to return to work and perform the essential functions of her job–including regular attendance–following the 30-day leave of absence she requested. Therefore there is no evidence from which a reasonable jury could conclude that Basden was a qualified individual with a disability at the time of her termination. Because only qualified individuals with disabilities are entitled to the protections offered by the ADA, PTI is entitled to summary judgment on Basden's claims under the ADA.

### B. Basden's Claim Under the FLMA

In addition to her ADA claims, Basden also alleges that PTI interfered with her rights under the FMLA. To succeed on an FMLA interference claim, "an employee must demonstrate that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled." *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). Unfortunately for Basden, because she had not been employed by PTI for twelve months at the time of her termination, she cannot satisfy the first element; she was not eligible for FMLA protection and therefore she had no rights under the FMLA. *See* 29 U.S.C. § 2611(2) (defining "eligible employee" under the FMLA). Basden acknowledges that fact, but suggests that PTI is nonetheless liable to her under the FMLA because it terminated her prior to her anniversary date and therefore prevented her from becoming an eligible employee. In essence, Basden alleges that PTI interfered with her right to become eligible for FMLA rights. Not surprisingly, Basden does not cite to any authority to support this novel theory. PTI is entitled to summary judgment on Basden's FMLA claim.

### IV. CONCLUSION

For the reasons set forth above, PTI's motion for summary judgment is **GRANTED** as to all claims in Basden's Complaint.

SO ORDERED: 07/19/2011

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification